IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANK DONTE BOOKER,<br><br>  Petitioner,<br><br>v.<br><br>SUPERINTENDENT MARK CAPOZZA,<br>THE ATTORNEY GENERAL OF THE<br>STATE OF PENNSYLVANIA, and THE<br>DISTRICT ATTORNEY OF<br>ALLEGHENY COUNTY,<br><br>  Respondents. | Civil Action No. 2: 18-cv-0091<br><br>Chief United States Magistrate Judge<br>Cynthia Reed Eddy |

## MEMORANDUM OPINION[1]

Petitioner, Frank Donte Booker ("Booker") initiated this action with the filing of a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition"). (ECF No. 1). In it, he alleges trial court error and ineffective assistance of counsel. For relief, Booker seeks a new trial. (*Id*. at 19). For the reasons that follow, the Petition will be denied, as will a certificate of appealability.

## Background

This case arises from the fatal shooting of Clavonne Rollins by Petitioner, Frank Donte Booker, on May 11, 2012, which occurred inside a car in which Rollins was the driver, Tamira Scheuermann was the front seat passenger, Darrell Brown was seated behind Scheuermann, and Booker was seated behind Rollins, with Rollins and Scheuermann's child in a baby seat between

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to jurisdiction by a United States Magistrate Judge, including entry of final judgment. (ECF Nos. 6 and 13).

1

the two men in the back seat. The background of this case was aptly summarized by the Pennsylvania Superior Court in its opinion affirming Booker's judgment of sentence as follows:

> On May 11, 2012, [Rollins] picked up his girlfriend, Tamira Scheuermann, at work and drove to the Get Go gas station located in Penn Hills where they were to meet some other people. Rollins was driving and Scheuermann was the front seat passenger and the one-year-old son that she had with Rollins was in a car seat in the middle of the back seat. At the Get Go station they met up with James Ingram whom they knew and Frank Booker, whom they had never met before. Ingram asked Rollins to give him a ride back to his house so that he could get his phone charger and he got into Rollins' vehicle. Since they did not know Booker, they left him at the Get Go gas station.
>
> Rollins drove Ingram to his house and they agreed to meet a little while later so all of them could smoke some marijuana. Later that day they met up with Gerald Brown and they smoked the marijuana. Rollins decided to go back to the Get Go station and was travelling along Coal Hollow Road when they ran into Ingram who was leaving his girlfriend's house who asked them to give Booker a ride and he would pay for it. They met up with Booker a short time later and he agreed to pay for the ride to go to Blackadore Street. Booker was seated directly behind Rollins in the left rear passenger seat. When they approached the intersection of Blackadore and Ravina, Rollins stopped the car. Scheuermann, who was on the phone, thought that Booker was going to pay Rollins for the jitney ride since he was fiddling with something inside of his hoodie. Booker then pulled a silver gun and put it to Rollins head and told him to "give it up." When Brown saw the gun, he opened the right rear passenger door and ran from the car. Rollins attempted to swat the gun away from Booker and Scheuermann grabbed his wrist in an effort to get it away from Booker. Rollins then attempted to push Booker toward the open right rear door when Booker started to fire anywhere between five and six shots at Rollins. Booker then fled from the scene. The Escalade started to drift back down Blackadore until it hit another car and came to rest. Rollins then opened the driver's door and rolled out of the car and was lying on the ground. Scheuermann called 911 and requested the police and paramedics who arrived within ten minutes of that call. It is obvious that Rollins was in critical condition as a result of the life-threatening wounds that he received. When he was transported by the paramedics to Presbyterian-University Hospital, he had no pulse and was subsequently declared dead by the physicians who initially treated him at the hospital. No weapon was found on Rollins by the paramedics or the emergency room personnel who attempted to treat Rollins.
>
> In processing the Escalade, two bullet fragments were found, one in the driver's door and the other one in the driver's footwell. It was determined that the bullet fragments were the same caliber and although they had similar markings, the criminalist who examined these fragments was unable to determine if they had

been fired from the same weapon because one of the fragments was so small. Brown and Scheuermann were interviewed that evening and told the Allegheny County Police that Booker was the shooter. The police prepared photo arrays for both Brown and Scheuermann and both of these individuals identified Booker as the individual who shot Rollins. An arrest warrant was issued for Booker and several weeks later, he was arrested in Williamsport, Pennsylvania.

*Commonwealth v. Booker*, No. 862 WLD 2014, slip op., at 1-3 (Pa. Super. Ct. Oct. 26, 2015) (quoting Trial Court 1925(b) Opinion, March 2, 2015, pp. 3-5)) (ECF No. 9-1 at 181-83).

Booker was charged by criminal information filed in the Court of Common Pleas of Allegheny County at CP-02-CR-0008338-2012 with one count of criminal homicide, one count of robbery – inflicting serious bodily injury, one count of possession of a firearm by a person prohibited, one count of carrying a firearm without a license, and three counts of recklessly endangering another person.

Booker's case proceeded to jury trial from August 20 – 22, 2013, before The Honorable David R. Cashman.  At the start of the trial, the court severed the charge of possession of a firearm by person prohibited, which was then tried by the bench along with Booker's remaining charges.[2]  At the conclusion of the trial, the jury convicted Booker of third degree murder; carrying a firearm without a license, and three counts of recklessly endangering another.  The jury acquitted Booker of robbery.  Judge Cashman convicted Booker of possession of a firearm by a person prohibited.

On November 26, 2013, Judge Cashman sentenced Booker to an aggregate sentence of 285 months (23.75 years) to 570 months (47.5 years) of incarceration for third degree murder and possession of a firearm, to be followed by seven years of probation.

---

[2]  The severed charge was docketed at CP-02-CR-0011318-2013.

Booker, through counsel, filed a series of post-sentence motions. The trial court did not rule on the motions and on May 7, 2014, the motions were denied by operation of law under Pennsylvania Rule of Criminal Procedure 720(B)(3)(b). On direct appeal, Booker, through counsel, raised these two claims:

> (i)   The trial court erred in failing to instruct the jury on the defense of justification; and
>
> (ii)  The trial court erred in failing to instruct the jury on the lesser-included offense of manslaughter.

Defendant-Appellant's Opening Brief (ECF No 9-1 at 118). On October 26, 2015, the Superior Court found the claims were waived for failure to object as required by Pa.R.Crim.P. 647(C) and affirmed the judgment of sentence on that basis. The Pennsylvania Supreme Court denied discretionary review on February 8, 2016. (ECF No. 9-1 at 221).

On March 11, 2016, Booker filed a *pro se* petition under the Post-Conviction Relief Act ("PCRA") claiming that his trial counsel, Elizabeth Delosa, Esquire, was ineffective for failing to do the following:

> (i)    appropriately object to the trial court's denial to charge the jury on the defense of justification / self-defense;
>
> (ii)   appropriately object to the trial court's denial to charge the jury on the lesser-included offense of manslaughter;
>
> (iii)  adequately consult Booker on his right to testify and in giving Booker unreasonable advice regarding that right; and
>
> (iv)   present Alice Applegate, Ph.D., to testify as an expert on Booker's unreasonable belief in using deadly force.

PCRA Petition, at 7 (ECF No. 9-1 at 228). On May 18, 2016, attorney Charles R. Pass III, Esquire was appointed counsel for Booker.

On June 16, 2017, Attorney Pass filed a motion for leave to withdraw pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. Ct. 1988) (en banc), along with an accompanying fifty-five page no-merit brief. (ECF No. 9-2 at 9-68).   On July 14, 2016, the trial court issued a notice of intent to dismiss the PCRA petition without a hearing, to which Booker filed a pro se response.  (ECF Nos. 9-2 at 70-78).  On September 20, 2016, the trial court dismissed the PCRA petition.

On May 3, 2017, acting *pro se,* Booker appealed the denial of his PCRA petition to the Superior Court and raised these four issues:

> (i)   Did the PCRA Court err in rejecting without a hearing Booker's claim that the trial counsel was ineffective for failing to lodge a timely and specific objection to the Court's refusal to charge the jury on justification / self-defense?
>
> (2)  Did the PCRA Court err in rejecting without a hearing Booker's claim that the trial counsel was ineffective for failing to lodge a timely and specific objection to the Court's refusal to charge the jury on the lesser-included offense of manslaughter?
>
> (3)   Did the PCRA Court err in rejecting without a hearing Booker's claim that the trial counsel was ineffective where she failed to provide a full consultation about Booker's right to testify, offered unreasonable advice to Petitioner not to testify, and thereby depriving Booker of his right to testify and the right to a planned and coherent trial strategy?
>
> (4)  Did the PCRA Court err in rejecting without a hearing Petitioner's claim that trial counsel was ineffective for failing to present Dr. Alice Applegate, Ph.D., an expert in forensic psychology, as a witness to support the "unreasonable belief" facet of the defense?

Booker's Appellate Brief at 2. (ECF No. 9-2 at 118).   On October 12, 2017, the Superior Court of Pennsylvania affirmed the order denying the PCRA Petition, ECF No. 9-2 at 228-233.  No further appeals were taken.

Having been denied relief in state court, Booker filed in this Court a *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254 raising these six claims:

(1) Trial court error for refusal to charge the jury on justification/ self-defense;

(2) Trial court error for refusal to charge the jury on voluntary manslaughter;

(3) Ineffective assistance of counsel for failure to object to the lack of jury instruction as to justification /self-defense;

(4) Ineffective assistance of counsel for failure to object to the lack of jury instruction as to voluntary manslaughter;

(5) Ineffective assistance of counsel for giving unreasonable advice to Booker not to testify at trial; and

(6) Ineffective assistance of counsel for failure to call Dr. Alice Applegate to bolster the claim of self-defense.

Respondents filed an Answer (ECF No. 9), in which they argue (i) that Claims 1 and 2 are procedurally defaulted and, in the alternative, that the claims lack merit; and (ii) that Claims 3-6, inclusive, were denied on the merits by both the PCRA court and the Superior Court and thus should be denied given AEDPA's highly deferential standard of review.

In response, Booker filed a Memorandum of Law (ECF No. 10) and a Reply (ECF No. 11). The Court has reviewed the filings of the parties, as well as the state court record, including the transcripts from the trial (T14-0052), verdict (T14-0367), sentencing hearing (T14-0405), and post-trial motion hearing on 4/24/2014 (T14-1767).

## The Standard for Habeas Relief under 28 U.S.C. § 2254

This case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, enacted on April 24, 1996 ("AEDPA"), "which imposes

significant procedural and substantive limitations on the scope" of the Court's review.³ *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 227 (3d Cir. 2017), *cert. denied*, No. 17-7437, -- U.S.---, 138 S. Ct. 1170 (Feb. 26, 2018). As a result, this Court may not grant a writ of habeas corpus on a claim that was adjudicated on the merits in state court proceedings unless the state courts' adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1) and (2). And under the AEDPA standard, the "[s]tate court[s'] relevant factual determinations are presumed to be correct unless the petitioner rebuts [that] presumption by clear and convincing evidence." *Han Tak Lee v. Glunt*, 667 F.3d 397, 403 (3d Cir. 2012) (citing 28 U.S.C. § 2254(e)(1)). AEDPA imposes a "highly deferential" standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt. *Blystone v. Horn*, 664 F.3d 397, 417 (3d Cir. 2011).

1. Exhaustion of State Remedies

Among AEDPA's procedural prerequisites is a requirement that the petitioner "has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C. § 2254(b)(1)(A)). "The exhaustion requirement is satisfied only if the petitioner can show that he fairly presented the federal claim at each level of the established state-court system for review."

---

³   The first consideration in reviewing a federal habeas petition is whether the petition was timely filed under AEDPA's one-year limitations period. 28 U.S.C. § 2244(d). Respondents do not dispute that Booker's petition was timely filed.

*Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004).  When a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts typically will refuse to entertain a petition for habeas corpus.  *Whitney v. Horn*, 280 F.3d 240, 250 (3d Cir. 2002).

Although mandatory, the exhaustion requirement "turns on an inquiry into what procedures are 'available' under state law."  *O'Sullivan*, 526 U.S. at 847.  Under Pennsylvania law, a federal claim becomes exhausted once it is presented to the Pennsylvania Superior Court, either as a direct appeal from a state criminal conviction or as an appeal from a PCRA Court's denial of post-conviction relief.  *See Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004) (finding that review from the Pennsylvania Supreme Court is unavailable, and therefore not required, to exhaust state court remedies).[4]

2.  The Procedural Default Doctrine

The doctrine of procedural default serves as a corollary to the exhaustion requirement and provides a basis for a federal court to refuse to review a habeas claim.  "When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.' "  *McCandless v.*

---

[4]  Traditionally, under Pennsylvania law, exhaustion meant that a claim must be presented to the trial court, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court.  *See Evans v. Court of Common Pleas, Delaware County*, *PA*, 959 F.2d 1227, 1230 (3d Cir. 1992).  However on May 9, 2000, the Pennsylvania Supreme Court issued Judicial Administration Order 218, which provides that "in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing or allowance of appeal following an adverse decision by the Superior Court in order to be deemed to have exhausted all available state remedies respecting a claim of error.  When a claim has been presented to the Superior Court, or to the Supreme Court of Pennsylvania, and relief has been denied in a final order, the litigant shall be deemed to have exhausted all available state remedies for purposes of federal habeas corpus relief. . . . "  *In re:  Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases,* No. 218 Judicial Administration Docket No. 1 (Pa. May 9, 2000) (per curiam).

*Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999) (quoting 28 U.S.C. § 2254(b)(1)(B)(i)). "However, claims deemed exhausted because of a state procedural bar are procedurally defaulted. . . ." *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Thus, claims are procedurally defaulted where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule. . . ." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Federal courts may not consider the merits of a procedurally defaulted claim unless the petitioner can demonstrate "cause" to excuse the default and "actual prejudice resulting from the alleged constitutional violation." *Preston v. Superintendent Graterford SCI,* 902 F.3d 365, 375 (3d Cir. 2018) (quoting *Davila v. Davis*, -- U.S. ---, 137 S. Ct. 2058, 2065 (2017) (quoting *Wainwright v. Skyes*, 433 U.S. 72 (1977)), *cert. denied*, -- U.S. ---, 139 S. Ct. 1613 (2019).[5]  To demonstrate "cause," a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  A petitioner satisfies the "prejudice" requirement by establishing that the trial was "unreliable or . . . fundamentally unfair" because of a violation of federal law. *Lockhart v. Fretwell,* 506 U.S. 364, 372 (1993). The burden lies with a petitioner to demonstrate

---

[5]  A petitioner, alternatively, can overcome a procedural default by demonstrating that the court's failure to review the defaulted claim will result in a "miscarriage of justice." *See Coleman v. Thompson*, 501 U.S. 722, 748 (1991); *McCandless v. Vaughn*, 172 F.3d 225, 260 (3d Cir. 1999). "However, this exception is limited to a 'severely confined category [] [of] cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner]'." *Preston v. Superintendent Graterford SCI,* 902 F.3d 365,375 n.11 (3d Cir. 2018) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (internal alteration in original) (quoting *Schlup v. Delo*, 514 U.S. 298, 329 (1995)).  Booker does not argue that his defaulted claims should be excused because failure to do so would result in a miscarriage of justice.  Further, the Court concludes that nothing in the record suggests that Booker could meet the *Schlup* test.  *See Schlup v. Delo*, 513 U.S. 298, 324 (1995) (explaining that the miscarriage of justice standard "requires 'new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial.'").

circumstances that would serve to excuse a procedural default.  *See Sweger v. Chesney*, 294 F.3d 506, 520 (3d Cir. 2002); *see also Coleman*, 501 U.S. at 750.

**Discussion**

1. <u>Claims One and Two – Trial Court Errors in Refusing to Charge the Jury on Justifiable Self-Defense and The Lesser-Included Offense of Voluntary Manslaughter</u>.

Booker raised both these claims to the Pennsylvania Superior Court on direct appeal. The state appellate court found that the claims were waived for failure to lodge a timely objection at trial as required by Pennsylvania Rule of Criminal Procedure 647(C)[6] finding that "while defense counsel requested that the trial court instruct the jury on the issue of self-defense, she did not object after the actual instruction did not include this issue.  Under **Pressley**[7] and **Parker**,[8] this failure results in waiver of Booker's challenges to the jury instructions."  Superior

---

[6]  Rule 647(C) provides as follows: "No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto <u>before the jury retires to deliberate</u>. All such objections shall be made beyond the hearing of the jury." (emphasis added).

[7]  *Commonwealth v. Pressley*, 887 A.3d 220 (Pa. 2005).  The issue in *Pressley,* strikingly similar to the issue here, was whether trial counsel properly preserved an objection to the trial court's jury instructions. In that case, defense counsel requested an instruction on the record, which the court declined to give to the jury. *Pressley*, 87 A.3d at 222. Defense counsel did not make a specific objection, and the superior court held that under Pa.Crim.R. 647(B) (re-numbered as Pa.R.Crim.P. 647(C)), counsel waived any issues regarding jury instructions. *Id*. On appeal, defense counsel cited a line of divergent cases in which jury instructions were preserved, "even in the absence of a specific objection following the charge where . . . points for charge were timely offered and rejected by the trial court." *Id*. at 223. Because of the conflicting case law, the Pennsylvania Supreme Court allowed appeal to clarify the procedure. *Id*. The Pennsylvania Supreme Court held that § 647(C) requires a "specific objection to the [jury] charge or an exception to the trial court's ruling on a proposed point to preserve an issue involving a jury instruction." *Id.*

[8]  *Commonwealth v. Parker,* 104 A.3d 17, 29 (Pa. Super. 2014).

Court Memorandum, 10/26/15 at 4 (ECF No. 9-1 at 186). Respondents argue that the claims are procedurally defaulted, and Booker cannot prove cause for the default and prejudice therefrom.

The procedural default doctrine prohibits federal habeas courts from reviewing a state court decision involving a federal question if the state court declined to rule on the merits of the claim because it determined that the petitioner did not comply with a state procedural rule, and that rule is independent of the federal question and adequate to support the judgment. *See, e.g.*, *Gray v. Netherland,* 518 U.S. 152, 162 (1996); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). A state rule of procedure is "independent" if it does not depend for its resolution on answering any federal constitutional question. *See, e.g.*, *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). That is the case here, as the Superior Court's decision turned on the application of Pennsylvania Rule of Criminal Procedure 647(C), which does not rely, in whole or in part, on federal law.

Further, Pennsylvania Rule of Criminal Procedure 647(C) is "adequate" to support the judgment. A state rule is "adequate" if: (1) the state procedural rule was sufficiently clear at the time of the default to have put the petitioner on notice of what conduct was required; (2) the state appellate court reviewing the petitioner's claim refused to review it on the merits because the petitioner failed to comply with the rule; and (3) the state court's refusal was consistent with other decisions. *Shotts v. Wetzel*, 724 F.3d 364, 370 (3d Cir. 2013); *Nara v. Frank*, 488 F.3d 187, 199 (3d Cir. 2007). *See also Beard v. Kindler*, 558 U.S. 53, 60 (2009) (discretionary state rules can be "adequate"); *Ford v. Georgia*, 498 U.S. 411, 423–24, (1991) (a state procedural rule is "adequate" if it is "firmly established and regularly followed" at the time that the alleged procedural default occurred).

Here, Rule 647(C) put counsel on notice of what conduct was required; the Superior Court refused to review the claims on the merits because counsel failed to comply with the rule;

11

and the Superior Court's refusal was consistent with other decisions. This rule has been consistently followed in Pennsylvania since 2005, when *Pressley* was decided by the Pennsylvania Supreme Court. As a result, Booker's claims are procedurally defaulted due to an independent and adequate state procedural rule.

A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either: (1) "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law; or (2) failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750; *Carter v. Vaughn*, 62 F.3d 591, 595 (3d Cir. 1995). On the record before this Court, there does not appear to be any excuse to overlook the procedural default of these claims.[9]

Even if the jury instruction claims were not waived, the Court even under de novo review, finds that the claims are without merit. Although not binding on this Court, the Court finds the reasoning of the trial court to be persuasive and supported by the record. Trial Court 1925(b) Opinion, 3/2/2015 (ECF No. 9-1, at 99-112). The proposed defense of justifiable self-defense was premised not upon facts of record but was supposition and the inferences to be drawn from those suppositions. And similarly, the issue of voluntary manslaughter never arose since there was insufficient factual basis to establish that Booker killed Rollins in a heated passion or did so with the unjustifiable belief of a right of self-defense.

For all these reasons, Claims One and Two will be denied.

---

[9] Booker has also raised these claims in his habeas Petition on the basis that his trial counsel was ineffective for failing to assert a timely objection to the Court's refusal to charge on justification and manslaughter. *See* discussion of Claims Three and Four.

2. <u>Ineffective Assistance of Trial Claims – Claims Three through Six, Inclusive.</u>

Booker claims that his trial counsel provided ineffective assistance during the trial phase of his criminal proceedings. To prevail on these four claims, Booker must show that his counsel was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* has two components. Under the first prong, often called the "performance" prong, a petitioner must show that counsel's performance fell below an objective standard of reasonableness." *Id*. at 688. Under the second prong, often called the "prejudice" prong, a petitioner must demonstrate prejudice as a result of counsel's deficient performance. *Id*. at 692. Although a petitioner must satisfy both prongs to succeed on his ineffectiveness claim, the Supreme Court noted that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697. *See also Mathias v. Superintendent Frackville SCI,* 876 F.2d 462, 477 (3d Cir. 2017).

Claims Three through Six raised in Booker's habeas petition were denied on the merits by the Superior Court on PCRA review. As a result, as explained above, this Court will not be reviewing the claims de novo and Booker must demonstrate more than a violation of his Sixth Amendment rights. He also must overcome the AEDPA deferential standard, as well as the presumption of correctness this Court must afford the state court findings under § 2254(e).

Before addressing any of the claims before it, the Superior Court set out the standard for reviewing claims of ineffectiveness of counsel, as follows:

> Our Supreme Court has stated:
>> Counsel is presumed effective, and the petitioner bears the burden of proving otherwise. **Commonwealth v. Roney**, 622 Pa. 1, 79 A.3d 595, 604 (2013). To prevail on an ineffectiveness claim, the petitioner must plead and prove, by a preponderance of the evidence, the Sixth Amendment performance and prejudice standard set forth in **Strickland v. Washington**, 466 U.S. 668, 104

> > S. Ct. 2052, 80 L. Ed. 2d 674 (1984). This Court has divided the performance component of **Strickland** into two sub-parts dealing with arguable merit and reasonable strategy. **Commonwealth v. Baumhammers**, . . . 92 A.3d 708, 719 ([Pa.] 2014). Thus, to prevail on an ineffectiveness claim, the petitioner must show: that the underlying legal claim has arguable merit; that counsel had no reasonable basis for his or her action or omission; and that the petitioner suffered prejudice as a result. *Id***.** (citing *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975–76 (1987)).
>
> **Commonwealth v. Bardo**, 105 A.3d 678, 684 (Pa. 2014).  In other words, to satisfy his burden, Appellant must plead and prove by a preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different." **Commonwealth v. Fulton**, 830 A.2d 567, 572 (Pa. 2003). Failure to satisfy any prong of this test will result in rejection of the petitioner's ineffective assistance of counsel claim. **Commonwealth v. Jones**, 811 A.2d 994, 1002 (Pa. 2002).  Therefore, if a petitioner fails to prove by a preponderance of the evidence any of the prongs, the court need not address the remaining prongs. **Commonwealth v. Fitzgerald**, 979 A.2d 908, 911 (Pa. Super. 2009), **appeal denied**, 990 A.2d 727 (Pa. 2010). Where the underlying claim is meritless, "the derivative claim of ineffective assistance of counsel for failing to object has no arguable merit." **Commonwealth v. Spotz**, 47 A.3d 63, 122 (Pa. 2012). Further, "counsel cannot be considered ineffective for failing to pursue a meritless claim." **Commonwealth v. Lopez**, 739 A.2d 485, 495 (Pa. 1999), **cert. denied**, 530 U.S. 1206 (2000).

Superior Court Opinion, 10/12/2017, at pp. 4-5 (ECF No. 9-2 at 231-32).

> The Superior Court then added:
>
> Consistent with the foregoing, we have reviewed the record and determined that the PCRA court did not err in concluding that Appellant's claims of trial counsel ineffectiveness did not warrant relief. The PCRA court's reasoning is supported by the record and free of legal error. The Honorable David R. Cashman, who sat as both the trial and PCRA court, has ably addressed Appellant's four claims, referencing prevailing precedents, as well as the evidence presented at trial. Accordingly, we adopt Judge Cashman's opinion in affirming the order denying Appellant post-conviction relief.

*Id*. at 5-6 (ECF No. 9-2 at 232-33).

a. <u>Claims Three and Four – Ineffective Assistance of Counsel For Failing to Lodge a Timely and Specific Objection to the Court's Refusal to Charge the Jury on Justification / Self-Defense and For Failing to Lodge a Timely and Specific Objection to the Court's Refusal to Charge the Jury on the Lesser-Included Offense of Manslaughter</u>

The PCRA court addressed these claims by first stating that "[w]ith respect to the two claims of error regarding the ineffectiveness of Booker's trial counsel for failure to object to this Court's refusal to charge the jury on the defense of justification and on the less-included offense of manslaughter, the Court's rationale on why those underlying claims had no merit was previously set forth in its original Opinion and that rationale has not changed." PCRA opinion, 2/27/2017 at 9 (ECF No. 9-2 at 97). The PCRA court went on to quote at length its own opinion from direct appeal in which it concluded that the underlying claims had no merit, *id.* at 9-18 (ECF No. 9-2 at 97-106) and concluded that "since the underlying claims had no merit, Booker's trial counsel could not have been ineffective for failing to object to this Court's refusal to charge on his claims." *Id*. at 18. (ECF No. 9-2 at 106). The Superior Court adopted the PCRA court's reasoning and conclusion as its own. (ECF No. 9-1 at 228).

After thoroughly reviewing the record, this Court finds that Booker has failed to meet his burden to overcome AEDPA's deferential review. The Superior Court adopted the PCRA court's finding that,

> There was no evidence presented as to the defendant's state of mind or what an individual's state of mind would have been had they been in the position that Booker fund himself. There was no evidence to conclude that anyone in the Cadillac Escalade, other than Booker, had a weapon. There was no evidence of a fight or altercation between Booker and Rollins nor was there any evidence which one could reasonably infer that it was then and there necessary for Booker to use deadly force to repel an attack being perpetrated against him by his victim. In light of Booker's failure to point to evidence from which one could reasonable conclude that he was in fear of serious bodily injury or death, the claim of

15

> justifiable defense was rejected and this Court properly refused to charge on that purported defense.
>
> . . .
>
> The issue of voluntary manslaughter never arose since there was insufficient factual basis to establish that Booker killed Rollins in a heated passion or did so with the unjustifiable belief of a right of self-defense.  This Court charged the jury based upon the facts of record and limited those issues for its consideration to first-degree murder, second-degree murder and third-degree murder.  As with Booker's first claim of error, this current contention has no merit.
>
> Since the underlying claims had no merit, Booker's trial counsel could not have been ineffective for failing to object to this Court's refusal to charge on his claims.

PCRA Opinion, 2/27/2017 at 6, 18 (ECF No. 9-2 at 104, 106).   The PCRA court and the Superior Court addressed the claims on their merits claims, and referenced the prevailing precedents, as well as the evidence presented at trial.

This Court finds that Booker has not demonstrated that the Superior Court's decision was contrary to, or involved an unreasonable application of, established Federal law — *Strickland* — as determined by the Supreme Court of the United States, or is there anything in the record to suggest the Superior Court's decision was based on unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  Accordingly, Claims Three and Four will be denied on the merits.

        b.      <u>Claim Five - Ineffective Assistance of Counsel for Failing to Provide a Full Consultation About Petitioner's Right to Testify and Offered Unreasonable Advice to Petitioner Not to Testify</u>

As with Claims Three and Four, the PCRA court thoroughly addressed this issue and found that "[t]he fallacy of this claim of error is demonstrated by the colloquy that this Court undertook with Booker with respect to his right to remain silent or to testify, which is contained in pages two hundred twenty-six through two hundred thirty-two of the trial transcript." PCRA

16

Opinion, 2/27/2017 at 18 (ECF No. 9-2 at 106). The PCRA court proceeded to discuss in detail the advice Booker was given by the Court during the colloquy. The PCRA court concluded,

> It is abundantly clear that Booker understood his right to testify and his right to remain silent. It is also clear that if in fact his counsel suggested that he not testify, there was a legitimate reason for him not to testify since his testimony could have been impeached by his 2000 convictions for burglary, theft by unlawful taking and theft by deception. In addition, he had a conviction for the unauthorized use of a motor vehicle in 2010 and in 2011 he had a conviction for criminal attempt to commit criminal trespass. Booker knew of these convictions and his counsel was also well aware of them and it would have been a reasonable strategy to suggest that he not testify since these convictions would be used to impeach any evidence that he might have attempted to educe (sic) with respect to his state of mind and belief that he had the defense of justification and also, whether or not he acted in the heat of passion or an unjustifiable belief of the right of self defense which would have entitled him to the charge of manslaughter. It is abundantly clear that Booker was well aware of his right to testify and he, and he alone, made the decision not testify.

*Id*. at 20 (ECF No. 9-2 at 108). Again, the Superior Court adopted the reasoning of the PCRA court finding that "the PCRA court's reasoning is supported by the record and free of legal error." Superior Court Memorandum, 10/12/2017 at 5 (ECF No. 9-2 at 232).

This Court finds that Booker has not demonstrated that the Superior Court's decision was contrary to, or involved an unreasonable application of, established Federal law — *Strickland* — as determined by the Supreme Court of the United States, or is there anything in the record to suggest the Superior Court's decision was based on unreasonable determination of the facts given the evidence presented in the State court proceeding. For these reasons, Claim Five will be denied on the merits.

    c.    <u>Claim Six - Ineffective Assistance of Counsel For Failing to Present Dr. Alice Applegate, Ph.D, An Expert in Forensic Psychology, As A Witness to Support the "Unreasonable Belief" Facet of the Defense</u>

As with Booker's first three claims of ineffectiveness of trial counsel, his final claim also was thoroughly addressed and rejected on the merits by the PCRA court. After quoting at length

17

the elements necessary to establish the reasonable belief that deadly force is needed to protect oneself from death or serious bodily injury, as set forth by the Pennsylvania Supreme Court in *Commonwealth v. Rivera*, 108 A.3d 779, 791-92 (Pa. 2014), the PCRA court determined as follows:

> There is no need to present expert testimony if a reasonable person believed that his or her life was in danger or believed that the situation they were in made it necessary to use deadly force to protect himself or herself. The problem with this particular contention, however, is that there is no basis for suggesting that [Booker] had a reasonable belief. Booker did not testify, his state of mind was never placed at issue, the facts of the case were such that he was the aggressor, he was the one that had the weapon and he was the one that was attempting to commit a robbery since he placed a gun at the victim's head initially and demanded the victim's money. What Booker was attempting to do was establish the facts through a proposed expert since he decided not to testify. It also should be noted that Dr Applegate did not testify during trial, she testified at sentencing and not once through her testimony did she ever make reference to an unjustifiable belief that Booker had in the commission of these crimes. Rather, she attempted to present mitigating testimony with respect to his sentencing . . . .
>
> It is abundantly clear that this claim of error is not predicated upon a claim of ineffectiveness but, rather, on Booker's desire to have that expert testimony substituted for his own on his state of mind when he knew that his testimony would not be filled with challenges as a result of his numerous prior convictions.

PCRA Opinion, 2/27/2017 at 22-23 (ECF No. 9-2 at 110-11). Again, the Superior Court adopted the reasoning of the PCRA court finding that "the PCRA court's reasoning is supported by the record and free of legal error." Superior Court Memorandum, 10/12/2017 at 5 (ECF No. 9-2 at 232).

And as this Court found with his prior three claims, the Court again finds that Booker has not demonstrated that the Superior Court's decision was contrary to, or involved an unreasonable application of, established Federal law, i.e., *Strickland*, as determined by the Supreme Court of the United States, or is there anything in the record to suggest the Superior Court's decision was

based on unreasonable determination of the facts given the evidence presented in the State court proceeding.  Thus, Claim Six will be denied on the merits.

## Certificate of Appealability

Section 102 of AEDPA, which is codified at 28 U.S.C. § 2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*.  Applying those standards here, the Court concludes that jurists of reason would not find it debatable whether each of Slater's claims should be dismissed.  For these reasons, a certificate of appealability will be denied.

## Conclusion

For all of the above reasons, the Petition for a Writ of Habeas Corpus will be denied and a certificate of appealability will also be denied.   An appropriate Order follows.

Dated:  July 6th, 2020                             s/ Cynthia Reed Eddy
                                                                            Cynthia Reed Eddy
                                                                            Chief United States Magistrate Judge

cc:     **FRANK DONTE BOOKER**
       LJ8774
       48 Overlook Dr.
       LaBelle, PA 15450
       (via U.S. First Class Mail)

       **C. Leon Sherman**
       Allegheny County District Attorney
       (via ECF electronic notification)